```
                    UNITED STATES BANKRUPTCY COURT
                     EASTERN DISTRICT OF KENTUCKY
                          LEXINGTON DIVISION



IN RE:

S.J. COX ENTERPRISES, INC.

DEBTOR                                              CASE NO. 07-50705



PEOPLES BANK OF KENTUCKY, INC.                              PLAINTIFF


VS.                                                 ADV. NO. 08-5066


U.S. BANK, N.A., COMMUNITY TRUST
BANK, INC., KENTUCKY BANK and
ANNA C. JOHNSON, TRUSTEE                                    DEFENDANTS
```

**MEMORANDUM OPINION**

This matter is before the court on the Motion for Partial Summary Judgment Against Kentucky Bank filed by the Plaintiff and Defendants Community Trust Bank, Inc. ("Community Trust") and U.S. Bank, N.A. ("U.S. Bank") (collectively, "the Movants"), the Response of Defendant Kentucky Bank, the Plaintiff's Reply and U.S. Bank's Reply.  The court is called upon here to determine the effect of a Kentucky Bank employee's unauthorized termination of a UCC-1 financing statement filed by the Plaintiff to perfect its blanket security interest in equipment of the Debtor.  This court has jurisdiction of this matter pursuant to Judicial Code section 1334(b); it is a core proceeding pursuant to Judicial Code section 157(b)(2)(K).

    1.   <u>Factual and procedural background</u>

Beginning in 2000 and continuing to December 2006, the Plaintiff loaned various amounts to the Debtor.  The Debtor granted the

1

Plaintiff a security interest in its equipment in regard to each of the transactions. On December 1, 2006, the Debtor executed and delivered to the Plaintiff a Multi-Purpose Note and Security Agreement evidencing the Plaintiff's loan to the Debtor in the principal amount of $795,050.00, representing an extension and renewal of previous loans. To perfect its security interest in these loans, the Plaintiff filed a UCC-1 financing statement numbered 2002-1882862-79 ("the Financing Statement") with the Kentucky Secretary of State on November 19, 2002. The secured party was listed as "Peoples Bank" with an address in Flemingsburg, Kentucky. The Debtor later defaulted on the December 1, 2006 note, and as of April 10, 2007 was indebted to the Plaintiff in the amount of $806,661.39, plus interest, late charges, attorney fees, and costs.

On September 23, 2002, March 4, 2003, and November 6, 2003, three different UCC-1 financing statements were filed identifying a security interest in certain specific pieces of the Debtor's equipment. Each statement listed the secured party as "Peoples Bank" with an address in Morehead, Kentucky. These statements were filed by Peoples Bank of Sandy Hook, Kentucky, now known as Kentucky Bank. On May 31, 2005, a Kentucky Bank employee filed on-line termination statements with the Kentucky Secretary of State. The three aforementioned financing statements were terminated and released, as well as the Plaintiff's Financing Statement. The Plaintiff did not authorize such termination.

The Debtor's titled equipment has been sold, and the proceeds from that sale have been distributed to creditors who had liens on the titles. Proceeds in the amount of $150,227.50 from the sale of

untitled equipment remain undistributed, however, and are in dispute. As a result of the purported termination of the Financing Statement, Community Trust and U.S. Bank claim interests superior to that of the Plaintiff.

U.S. Bank loaned the Debtor $330,000.00 in August 2004, and the Debtor granted U.S. Bank a security interest in certain equipment that is the subject of this proceeding. U.S. Bank filed a UCC-1 financing statement numbered 2004-2041883-52 with the Kentucky Secretary of State on September 27, 2004 to perfect its security interest in the equipment. U.S. Bank was concerned with four security interests perfected by financing statements all filed in the name of "Peoples Bank." These included the Plaintiff's Financing Statement and the three others filed by "Peoples Bank," i.e., Peoples Bank of Sandy Hook, Kentucky, n/k/a Kentucky Bank (collectively, "the Peoples Bank Financing Statements").

Subsequently, the Debtor informed U.S. Bank that Peoples Bank of Sandy Hook, Kentucky declined to release its security interest in the equipment until the Debtor paid off an additional debt owed to it. The principals of the Debtor then signed a farm security agreement which granted U.S. Bank a security interest in certain farm equipment they owned. On January 4, 2005, U.S. Bank filed a UCC-1 financing statement numbered 2005-2060855-33 with the Kentucky Secretary of State perfecting its security interest in the farm equipment. A search of the Kentucky Secretary of State's index of UCC records revealed that on May 31, 2005, the Peoples Bank Financing Statements had been terminated.

U.S. Bank filed a UCC-1 financing statement numbered 2005-

2106734-50 on July 25, 2005 reflecting an updated list of equipment subject to its security interest, and on August 3, 2005 terminated its financing statement in regard to the farm equipment, releasing its security interest in that property. U.S. Bank later learned that Peoples Bank of Sandy Hook, Kentucky is now known as "Kentucky Bank," and that it was not the secured party on the Plaintiff's Financing Statement.

On March 24, 2004, January 28, 2005, and May 25, 2005 the Debtor executed promissory notes to Community Trust in the respective amounts of $10,200.00, $10,540.00, and $98,790.00. All were secured by Commercial Security Agreements granting Community Trust a security interest in certain equipment. These security interests were perfected by the filing of UCC-1 financing statements numbered 2004-1999813-96, 2005-2066787-23, and 2005-2094985-14, respectively. As of April 8, 2008, the balances due on the respective notes were $4,896.68, $8,712.12, and $1,492.96, for a total of $15,1010.76, plus interest accruing thereafter. As of September 19, 2008 the total payoff was $16,757.38.

As a result of the termination of its Financing Statement, it appeared that the Plaintiff would make no claim to any interest in the Debtor's equipment. Thus, when Community Trust's security interest was perfected by the filing of financing statement 2005-2094985-15 on June 3, 2005, it appeared to represent a first lien on the property subject only to Community Trust's other prior interests in various equipment.

The Plaintiff filed its Complaint herein on May 27, 2008. Community Trust filed its Answer, Counterclaim and Cross-claim on June

11, 2008. Kentucky Bank filed its Answer on June 27, 2008. U.S. Bank filed its Answer, Counterclaim and Cross-claim on June 30, 2008. The Movants filed their Motion for Partial Summary Judgment Against Kentucky Bank on October 20, 2008. Kentucky Bank filed its Response on November 3, 2008, U.S. Bank filed its Reply in Support of Motion for Partial Summary Judgment on November 10, 2008, and the Plaintiff filed its Reply on November 11, 2008. The court conducted a hearing on November 13, 2008, and took the matter under submission for decision.

    2. <u>Discussion</u>

        a. <u>The summary judgment standard</u>

Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by Bankruptcy Rule 7056, provides that summary judgment is appropriate and "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has observed that

> this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of *material* fact.
>   As to materiality, the substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2510 (1986)(emphasis in original).

The summary judgment standard is set out in *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

The Sixth Circuit has opined that "[r]ead together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989).

    b.   Effect of termination of the Financing Statement

Actions taken in regard to financing statements in Kentucky are governed by KRS 355.9-509, -511, and -513. These statutes provide in pertinent part as follows:

> **355.9-509 Persons entitled to file a record**
> (1) A person may file an initial financing statement, amendment that adds collateral covered by a financing statement, or amendment that adds a debtor to a financing statement only if:
> (a) The debtor authorizes the filing in an authenticated record or pursuant to subsection (1) or (2) of this section;
> . . .
>
> **355.9-511 Secured party of record**
> (1) A secured party of record with respect to a financing statement is a person whose name is provided as the name of the secured party or a representative of the secured party in an initial financing statement that has been filed. . . .
> (2) If an amendment of a financing statement which provides the name of a person as a secured party or a representative of a secured party is filed, the person named in the amendment is a secured party of record. . . .
> (3) A person remains a secured party of record until the

> filing of an amendment of the financing statement which
> deletes the person.
>
> **355.9-513 Termination statement**
> . . . .
> (3) In case not governed by subsection (1) of this section,
> within twenty (20) days after a secured party receives an
> authenticated demand from a debtor, the secured party shall
> cause the secured party of record for a financing statement
> to send to the debtor a termination statement for the
> financing statement or file the termination statement in the
> filing office if:
>    (a) Except in the case of a financing statement covering
> accounts or chattel paper that has been sold or goods that
> are the subject of a consignment, there is no obligation
> secured by the collateral covered by the financing statement
> and no commitment to make an advance, incur an obligation,
> or otherwise give value; . . . .
> (4) Except as otherwise provided in KRS 355.9-510, upon the
> filing of a termination statement with the filing office,
> the financing statement to which the termination statement
> relates ceases to be effective.  . . . .

KRS 355.9-510; KRS 355.9-511; KRS 355.9-513.

These provisions make it clear that the only party authorized to file a termination statement is the secured party of record.  Kentucky Bank was not the secured party of record on the Financing Statement, and the Movants maintain that Kentucky Bank's unauthorized termination of the Financing Statement caused compensable losses.

The Plaintiff's Financing Statement was the first filed by any of the Movants, and but for the unauthorized termination, the Plaintiff would have held the priority lien on the Debtor's subject equipment.  The termination of a financing statement, even if mistaken, releases the secured creditor's lien against the debtor's property.  *Crestar Bank v. Neal (In re Kitchin Equip. Co. of Virginia, Inc.)*, 960 F.2d 1242, 1245 (4th Cir. 1992).  The Plaintiff states that the dispute over priority that now exists on account of the unauthorized termination will cost it $150,226.50 in proceeds from the sale of the

equipment, as well as substantial legal expenses.  The other Movants, U.S. Bank and Community Trust, also contend that they have incurred expenses and risk losing their portions of the sales proceeds on account of the unauthorized termination.  Both contend that they made loans to the Debtor with the belief that their respective security interests would prevail.

The Movants contend that Kentucky Bank is responsible for paying for the losses they have incurred as a result of the unauthorized termination of the Financing Statement.  They cite KRS 355.9-625 as the basis for their position.  That statute provides in pertinent part: "Subject to subsections (3), (4), and (6) of this section, a person is liable for damages in the amount of any loss caused by a failure to comply with this article."  KRS 355.9-625(2).  It further provides that "[a] person that, at the time of failure . . . held a security interest in or other lien on the collateral may recover damages under subsection (2) of this section for its loss[.]" KRS 355.9-625(3)(a). The Movants state that there is no question that they are all secured parties with "a security interest in or other lien on the collateral," and as such may recover damages from Kentucky Bank for their losses.

Alternatively, the Movants argue that they are entitled to summary judgment against Kentucky Bank on the basis of general negligence law.  They state that Kentucky law holds that violation of a statute constitutes negligence per se.  They cite *Lewis v. B & R Corp.*, 56 S.W.3d 432, Ky.App. (2001) in support of their position. There the court stated:

While it is unquestioned that violations of statutes

> constitute negligence per se, that statement is coextensive with the requirement that the violation 'must be a substantial factor in causing the result.' *Britton v. Wooten*, Ky., 817 S.W.2d 443, 447 (1991). However, the mere violation of a statute does not necessarily create liability unless the statute was specifically intended to prevent the kind of occurrence which has taken place. Not all statutory violations result in liability for that violation. The violation must be a substantial factor in causing the injury and the [statute] must be one intended to prevent the specific type of occurrence before liability can attach.

*Id.* at p. 438. They further contend that there is no defense of reasonableness or good faith to negligence per se because the sole issue is whether a violation of the statute occurred. *See Stivers v. Ellington*, 140 S.W.3d 599, Ky.App. (2004). The Movants contend that they meet the criteria set out above in that KRS 355.9-509, -511, and -513 were specifically intended to prevent unauthorized terminations of financing statements, and Kentucky Bank's unauthorized termination of the Financing Statement was a substantial factor in the Movants' respective losses.

Kentucky Bank responds that priority among the Movants must be determined before its liability can be established. It argues that Peoples Bank's first priority status was not affected by the "release" of the Financing Statement. That position is not necessarily supported by case law. As set out by the court in *In re Silvernail Mirror and Glass, Inc.*, 142 B.R. 987 (Bankr. M.D. Fla. 1992),

> a court may apply equitable principles to reform a termination statement to relieve a party of a *minor* error. At least one court has set aside a termination statement filed by mistake. *See In re Burkhard*, 6 UCC 244 (Bankr. S.D. Ohio 1969). In this case, the filing of the Termination Statement was far from a minor error. The language of the Termination Statement unambiguously terminated Park Bank's security interest in all its collateral, and there is no way to construe the Termination Statement as only a partial release.

*Id.* at 989-90.  Further, a termination statement's "effect on a security interest is dramatic and final."  *In re Kitchin Equip. Co. of Virginia, Inc.*, 960 F.2d at 1247.  The filing of a termination statement "cannot be considered a minor error."  *Id.*

The *Silvernail* court has also observed that

> [T]he Termination Statement gave all indications to the world that Park Bank was terminating its security interest in all its collateral.  The filing of a Termination Statement is a method of making the record reflect the true state of affairs so that fewer inquiries will have to be made by persons who consult the public records. . . . Therefore, even if the Termination Statement did not reflect the parties' true intent, it would be materially misleading to a potential creditor relying on the public records . . .

*In re Silvernail Mirror and Glass, Inc.*, 142 B.R. at 989.  This court agrees that the filing of a termination statement cannot be considered a minor error.  Peoples Bank's security interest was terminated, and Kentucky Bank is liable for the effect of that termination.  This court therefore concludes that it should sustain the Movants' Motion for Partial Summary Judgment that Kentucky Bank wrongfully terminated the Financing Statement and that it is obligated to compensate the Movants in order to return them to the positions they would have held but for the wrongful termination.  An order in conformity with this opinion will be entered separately.

Copies to:

Amanda Pope Thompson, Esq.
Mary Elizabeth Naumann, Esq.
James B. Ratliff, Esq.
Sannie Overly, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:
*William S. Howard*
Bankruptcy Judge
Dated: Tuesday, March 03, 2009
(wsh)**